# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:97-cr-340-MOC-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| ARNOLD LORENZO PAIGE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 47). The Government has responded in opposition to the motion.

## I.    BACKGROUND

On August 13, 1998, Defendant was convicted at trial of assault on a U.S. Postal employee with a deadly weapon, in violation of 18 U.S.C. § 111 (Count 1); assault and robbery of U.S. Postal employees with a deadly weapon, in violation of 18 U.S.C. § 2114(a) (Count 3); two counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 2 and 4); possession and attempted disposal of U.S. Postal money order and aiding and abetting the same, in violation of 18 U.S.C. § 2114(b) (Count 5); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 6).

The evidence at trial established that, on November 10, 1997, Defendant entered a post office brandishing a revolver. He ordered two clerks to the ground, demanded money, and threatened their lives if they failed to comply. The victims directed Defendant to the counter line drawers, from which Defendant took cash bills and bait money orders. Defendant then demanded

-1-

one of the victims to open the drawers in the safe, and Defendant took the money out of the safe's drawers. Defendant then put his gun against the victim's head and removed the victim's wallet, threatening to shoot him if he reacted. Defendant then walked to the other victim, put his gun to the victim's head, and did the same. As law enforcement approached Defendant, he dropped a firearm into a nearby trash can. He then charged the officer, knocking him back, but he was apprehended without further issue shortly thereafter. When he was arrested, officers found ammunition and a bait money order in his pocket.

Defendant was subject to a mandatory term of life imprisonment on Counts 1 and 3 pursuant to 18 U.S.C. § 3559(c). He was sentenced as an Armed Career Criminal and a career offender, resulting in a total offense level of 37 and a criminal history category of VI. On May 6, 1999, Defendant was sentenced to a mandatory term of life imprisonment on Counts 1, 3, and 6; ten years, concurrent, on Count 5; and five years each, consecutive, on Counts 2 and 4. (Doc. No. 36).

Defendant is currently incarcerated at Thompson USP in Thomson, Illinois. The prison has fully vaccinated 210 staff members, and 450 inmates (33% of the current inmate population and does not account for those additional inmates who declined vaccination). According to Defendant's BOP case manager, BOP has not considered Defendant as a candidate for home confinement.

Defendant is 59 years old and suffers from hypertension, sleep apnea, hyperlipidemia, prediabetes, and several other medical conditions. See (Doc. No. 50-1 at pp. 36-39: Ex. A, Medical Records). On or about November 2, 2020, Defendant was diagnosed with COVID-19. (Id. at pp. 29–32). He suffered from headaches and body aches, but his medical records indicate

that he did not complain of other symptoms. (Id.). Defendant was released from isolation on November 13, 2020. (Id. at p. 118). On April 2, 2021, Defendant was offered the COVID-19 Moderna vaccine, but he refused to be vaccinated. (Id. at p. 125).

On or about August 28, 2020, Defendant submitted an informal compassionate release request to the warden of his facility based on concerns about COVID-19. See (Doc. No. 47 at p. 5). The warden denied the request on October 20, 2020. (Id. at p. 6). On or about April 27, 2021, Defendant filed the pending motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the ground that he is at high risk of developing serious illness from COVID-19 due to his claimed health conditions and because he believes his sentence to be unusually long. (Id.).

**II.     DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. §

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's

---

3582(c)(1)(A)(i). Id. at pp. 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show

extraordinary and compelling circumstances warranting his early release from prison. Defendant suffers from the CDC-recognized risk factor of hypertension, but he no longer presents an "extraordinary and compelling reason" because he has declined vaccination. On April 2, 2021, the defendant was offered the Moderna COVID-19 vaccine, and he refused it, despite that has no known medical contraindication for the vaccine, and despite that the vaccine has been shown to be approximately 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19. See FDA Decision Memorandum, Moderna, Dec. 18, 2020, https://www.fda.gov/media/144673/download. Moreover, Defendant contracted COVID-19 while in prison and has recovered from it.

In considering a motion for compassionate release, this Court must consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. See 18 U.S.C. § 3582(c)(1)(A). The nature and circumstances of Defendant's offense, combined with his lengthy criminal history, establishes that Defendant will still pose a danger to the community if released. On September 7, 1978, at 16-years-old, Defendant was convicted of common law robbery and sentenced to five years imprisonment. He was paroled on May 9, 1980. On February 10, 1983, Defendant was convicted of assault with a deadly weapon on a law enforcement officer and breaking and entering and sentenced to three years imprisonment. He was paroled on January 5, 1984. On February 10, 1984, several weeks after his parole, Defendant and an accomplice forced a victim into her car, with Defendant driving and the accomplice restraining the victim. They robbed the victim and left her in the trunk of the car overnight. On June 15, 1984, Defendant was convicted of second-degree kidnaping and common law robbery and was sentenced to thirty years imprisonment. He was paroled on September 26, 1996. The conduct

underlying his current conviction occurred on November 18, 1997, slightly more than one year after his parole. In sum, Defendant has been incarcerated for nearly his entire adult life, and on the prior instances he was paroled, he committed further violent crimes soon thereafter. Defendant's conduct in this case and his criminal history demonstrate that he will continue to be a danger to the public if released.

Defendant's argument that his sentence was extraordinarily long and resulted from his exercise of his constitutional right to a jury trial is unpersuasive. See (Doc. No. 47 at pp. 1–2). As set forth above, Defendant was sentenced pursuant to 18 U.S.C. § 3559(c); he was subject to a mandatory term of life imprisonment even if he pleaded guilty. Moreover, contrary to Defendant's argument, he was not sentenced to life imprisonment as an armed career criminal on the § 922(g) count as a result of the Armed Career Criminal Act's ("ACCA") residual clause. His three prior convictions included two convictions for North Carolina common law robbery, and one conviction for North Carolina breaking and entering, both of which remain qualifying felonies under the ACCA. See United States v. Dinkins, 928 F.3d 349, 357 (4th Cir. 2019) (North Carolina common law robbery is a qualifying predicate under force clause of ACCA); United States v. Mungro, 754 F.3d 267, 270 (4th Cir. 2014) (North Carolina breaking and entering is qualifying predicate under generic definition of burglary); see also United States v. Davidson, 802 F. App'x 800, 801 (4th Cir. 2020) (unpublished) (reaffirming Mungro). Thus, the sentence Defendant received in 1998 is the same sentence that Defendant could have received had he been sentenced today, and no sentencing disparity exists warranting compassionate release.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that,

in light of <u>United States v. McCoy</u>, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 47), is **DENIED**.

Signed: June 18, 2021

Max O. Cogburn Jr
United States District Judge